Karen BURTON, Appellee,

v.

**UNIVERSITY OF IOWA HOSPITALS & CLINICS, Appellant.**

**No. 96–1535.**

Supreme Court of Iowa.

June 18, 1997.

Rehearing Denied July 23, 1997.

Thomas J. Miller, Attorney General, and Gordon E. Allen, Deputy Attorney General, for appellant.

Wallace L. Taylor, Cedar Rapids, for appellee.

James A. Albert, Des Moines, for amicus curiae Iowa Freedom of Information Council.

J. Kirk Norris, Des Moines, for amicus curiae Association of Iowa Hospitals and Health Systems.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

At issue in this appeal is whether Iowa Code section 135.41 (1993) gives an in-hospital staff committee of a state hospital discretion to deny public inspection of records regarding summaries of nosocomial infections (infections that a person contracts while a patient at the hospital). Assuming the statute does give such discretion, we are then faced with the question whether such hospital must allow public inspection of the summaries pursuant to Iowa Code chapter 22, Iowa's open records law. Contrary to the district court's decision, we hold that the statute does indeed grant the in-hospital staff committee discretion to deny public inspection of the summaries. We further hold that chapter 22 does not supersede such discretion notwithstanding that the summaries are public records.

We therefore reverse the district court's grant of summary judgment to the party seeking inspection of the summaries. We remand for entry of summary judgment in favor of the hospital's motion and for an order dismissing the petition of the party seeking inspection.

The University of Iowa Hospitals and Clinics (UIHC) collects data on nosocomial infections that arise at the hospital. As mentioned, nosocomial infections are those that a person contracts while a patient at the hospital. Nosocomial infections can be caused in many ways, including lack of adequate hand washing, improper sterilization of medical instruments and devices, improper treatment of water, use of invasive procedures, or utilization of new medical devices and instruments. The Infection Control Subcommittee (ICS) at the hospital monitors and controls access to the nosocomial infection data.

On June 19, 1994, Karen Burton wrote to Dr. Richard Wenzel, who was then Chair of the ICS. In her letter Burton requested "immediate access to all records of rates of nosocomial infections at UIHC from 1990 through the most recent period for which records exist." The letter further stated: "This request is made under Iowa Code chapter 22 and excludes only those records identified as confidential in section 22.7, paragraph 2."

The same day Burton wrote to University of Iowa Vice–President Ann Rhodes, mentioning earlier conversations with hospital officials. The letter stated:

> On June 17, when I asked William Hesson on what basis UIHC refused to release infection rate information to the public, he cited Iowa Code sections 135.40–135.42. I have enclosed a copy of those sections for your review.
>
> Far from restricting public access to public records, the sections cited by Hesson are *permissive;* they allow the release of otherwise *confidential* records to a nar-

rowly defined population for narrowly defined purposes. As such, sections 135.40–135.42 have no relevance to my request under Iowa Code chapter 22, Examination of Public Records.

The ICS's senior assistant director, William W. Hesson, denied Burton's June 19 request made to Wenzel. Hesson's letter of denial to Burton, dated June 23, stated:

Dr. Wenzel has forwarded to me your recent letter requesting release of records of rates of nosocomial infections. As I informed you during our conversation earlier this month, it is the position of the UIHC that these records, consisting of information provided to an in-hospital staff committee to be used in the course of studies for the purpose of reducing morbidity and mortality, are strictly confidential pursuant to §§ 135.40–.42, Code of Iowa (1993).

I have also forwarded your request to the Office of the Attorney General for further review of your request and our position.

Hesson was also, at all relevant times, assistant director of legal services for the UIHC. On July 8 Burton called assistant attorney general Maureen McGuire. On July 28 McGuire wrote Hesson:

Your letters to Karen Burton regarding her request for access to the records on the rates of nosocomial infections have been forwarded to me for response.

I agree with you that under Iowa Code section 135.41 information that has been obtained for the purpose of studies to reduce morbidity and mortality is available only for medical research and education. However, Iowa Code section 135.41 does provide that "a summary of such studies may be released by any such group for general publication." Such studies shall not include the identity of any person included in the study. In view of that provision, the hospital can make available to Ms. Burton a summary of any such studies.

The determination whether to prepare and make public a summary is within the discretion of the hospital. The statute does not require that a summary be prepared or that it be released to the public.

Certainly, there are policy issues that you will want to take into account in making the determination.

After speaking with McGuire, Burton researched the exact types of data the UIHC had on nosocomial infections. Burton then renewed her request via a September 15 letter:

I request access to all statistical summaries, in the custody of the UIHC, of data on nosocomial infections, collected by the program of hospital epidemiology pursuant to the UIHC Infection Control Policy No. 107. This request is made under the authority of Chapter 22, Examination of Public Records, Iowa Code (1993) and should not be construed to include any request for access to any patient records or identities designated as confidential in Code section 22.7(2) or section 135.41.

This request includes but is not limited to access to all monthly, quarterly, and yearly summaries distributed by the program of hospital epidemiology pursuant to Policy No. 107 and which present nosocomial infection incidence densities by site and/or organism for each hospital unit surveyed.

In a September 30 letter to Burton, Hesson denied her latest request, again citing the data's alleged confidentiality pursuant to Iowa Code sections 135.40–.42. The letter cites the UIHC's reasons for keeping the data confidential:

The success of [the UIHC Program of Hospital Epidemiology] is highly dependent on the cooperation and support of the physicians, nurses and other caregivers whose care is subject to surveillance by the program. In turn, this support is dependent on our ability to provide assurances that the information obtained by the program will be kept confidential. I am unwilling to jeopardize the program, and thus the safety of patients, by authorizing the release of the information you have requested. The General Assembly has recognized this important link between confidentiality and patient safety and enacted sections 135.40–.42.

Several months later, Burton filed this suit requesting an injunction, pursuant to Iowa Code section 22.10, ordering the UIHC to comply with Iowa's Open Records Act (Iowa Code chapter 22). She later amended her petition to include requests for cost, damages, and attorney fees.

The UIHC answered, admitting refusal of disclosure, but denying a violation of chapter 22. The UIHC asserted two affirmative defenses: (1) "disclosure is prohibited by section 135.41" and (2) "defendant relied in good faith on advice of counsel."

Following discovery, both parties filed motions for summary judgment. Judge August F. Honsell granted Burton's motion for summary judgment and denied the UIHC's motion. Judge Honsell's ruling dealt only with liability under, and the applicability of, Iowa Code chapter 22. He reserved the issues of injunctive relief, damages, and attorney fees. Later Judge Honsell denied the UIHC's motion to reconsider.

Following a hearing on the issues of injunctive relief, damages, and attorney fees, Judge Larry J. Conmey denied Burton damages, allowed her attorney fees, and ordered the UIHC to comply with chapter 22. In addition, Judge Conmey enjoined the UIHC from any future violation of chapter 22 as to the documents that are the subject of this lawsuit.

The UIHC appealed and Burton cross-appealed. On its appeal, the UIHC challenges Judge Honsell's ruling that the summaries as public records must be disclosed pursuant to chapter 22. On her cross-appeal, Burton challenges Judge Conmey's ruling denying her damages and not awarding her the costs she incurred in retaining her expert witness.

■■■■ The UIHC's appeal is from a summary judgment ruling. Our review is therefore at law. Iowa R.App. P. 4. The district court must render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law.

Iowa R. Civ. P. 237(c). The parties agree there are no disputed facts. The case essentially involves an interpretation of several statutes and therefore presents solely legal issues. Summary judgment, therefore, is the appropriate remedy. *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 522 N.W.2d 39, 42 (Iowa 1994).

In its summary judgment ruling, the district court accurately summarized the positions of the parties in their respective motions:

> Plaintiff wants Defendant to make available to her the summaries of data on nosocomial infections at the University of Iowa Hospitals and Clinics. The request is premised on the data being public record pursuant to Iowa Code chapter 22. Defendant asserts that the information requested, which does not constitute a confidential record pursuant to Iowa Code section 22.7(2), is subject to Iowa Code sections 135.40, 135.41, and 135.42 and, therefore, it may be withheld.

To begin, the code sections relevant to our analysis are Iowa Code sections 22.2, 22.7(2), 135.40, 135.41, and 135.42. These provisions provide:

**22.2 Right to examine public records— exception.**

1. Every person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein.

**22.7 Confidential records.**

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

2. Hospital records, medical records, and professional counselor records of the condition, diagnosis, care, or treatment of a patient or former patient or a counselee or former counselee, including outpatient.

**Morbidity and Mortality Study.**

**135.40. Collection and distribution of information.**

Any ... hospital ... may provide information, interviews, reports, statements, memoranda, or other data relating to the condition and treatment of any person to the [Iowa] department [of public health], the Iowa medical society or any of its allied medical societies or the Iowa osteopathic medical association or any in-hospital staff committee, to be used in the course of any study for the purpose of reducing morbidity or mortality, and no liability of any kind or character for damages or other relief shall arise or be enforced against any person or organization by reason of having provided such information or material, or by reason of having released or published the findings and conclusions of such groups to advance medical research and medical education, or by reason of having released or published generally a summary of such studies.

### 135.41 Publication.

The [Iowa] department [of public health], the Iowa medical society or any of its allied medical societies or the Iowa osteopathic medical association or any in-hospital staff committee shall use or publish said material only for the purpose of advancing medical research or medical education in the interest of reducing morbidity or mortality, except that a summary of such studies may be released by any such group for general publication. In all events, the identity of any person whose condition or treatment has been studied shall be confidential and shall not be revealed under any circumstances. A violation of this section shall constitute a simple misdemeanor.

### 135.42 Unlawful use.

All information, interviews, reports, statements, memoranda, or other data furnished in accordance with this division and any findings or conclusions resulting from such studies shall not be used or offered or received in evidence in any legal proceedings of any kind or character, but nothing contained herein shall be construed as affecting the admissibility as evidence of the primary medical or hospital records pertaining to the patient or of any other writing, record or reproduction thereof not contemplated by this division.

The district court noted that chapter 22 makes the UIHC records public records because the UIHC is a state hospital. *See Head v. Colloton*, 331 N.W.2d 870, 873 (Iowa 1983) (holding that because the UIHC is a state hospital its records were public records for purposes of Iowa Open Records Act, defining "public records" to include "all records and documents of or belonging to this state"). The court also noted that the summaries do not relate to the condition, diagnosis, care, or treatment of a patient, former patient or outpatient. For this reason, the court concluded, the summaries Burton requested do not fall within any of the categories of confidential information in Iowa Code section 22.7.

The court further noted that the summaries are also the subject of sections 135.40 through 135.42 and thus recognized the obvious conflict between chapter 22 and those sections. In resolving the conflict the court reasoned:

> The only information mandated as confidential in sections 135.40–.42 is "the identity of any person whose condition or treatment has been studied." Section 135.40 provides that no liability shall arise by reason of *"having released or published generally a summary of such studies."* Section 135.42 sets out the circumstances under which release of data in accordance with this division is unlawful. This section provides that such information "shall not be used or offered or received in evidence in any legal proceeding of any kind or character...." Nothing in sections 135.40–.42 prohibits the release of the data summaries requested by [Burton]. If the legislature had so intended it would have provided for such a prohibition.

Like the district court, the UIHC would also construe the statutes together. In doing so, however, the UIHC insists that we should give the terms of the statute their customary and ordinary meaning and give effect to the purposes and intent of the statutes. If we do that, the UIHC argues, we would reach the conclusion that the UIHC's denial of Burton's request was permissible pursuant to the

discretionary power given to the UIHC by section 135.41. In addition, the UIHC points out that section 22.7 does not contain the exclusive definition of confidentiality. For example, the argument goes, many other statutes describe particular classes of public records and prescribe particular and specified nondisclosure mandates without mentioning chapter 22. To support its last point, the UIHC lists numerous examples of public records that the legislature has chosen to make confidential and privileged without referring to chapter 22.

■ Iowa Code chapter 68A, the predecessor to chapter 22, was enacted in 1967. *See* 1967 Iowa Acts ch. 106, §§ 1–8, 11. This was four years *after* the enactment of sections 135.40–.42. Under the facts, what we have here are several statutes enacted into law at different times but dealing with the same subject matter: public records. (Of course, were the UIHC not a state hospital, its records would not be public records subject to chapter 22.) The district court ruled, and Burton argues here, that chapter 22 controls and allows public access to the summaries. In contrast, the UIHC contends it had discretion under section 135.41 to deny public access. In these circumstances of apparent conflict, we follow the general rule that

> prior and later statutes dealing with the same subject matter although in apparent conflict, should as far as reasonably possible be construed in harmony with each other so as to allow both to stand and to give force and effect to each.

*Polk County Drainage Dist. Four v. Iowa Natural Resources Council,* 377 N.W.2d 236, 241 (Iowa 1985) (quoting *Baird v. Webster City,* 256 Iowa 1097, 1113, 130 N.W.2d 432, 441–42 (1964)).

■ For reasons that follow, we think the UIHC has the better argument. Section 135.41, dealing with publication, mandates that

> any in-hospital staff committee shall use or publish said material only for the purpose of advancing medical research or medical education in the interest of reducing morbidity or mortality, except that a summary of such studies *may* be released by [such committee] for general publication. In all

events the identity of any person whose condition or treatment has been studied shall be confidential and shall not be revealed under any circumstances.

(Emphasis added.)

The attorney general response of July 28 correctly observed "that under Iowa Code section 135.41 information that has been obtained for the purpose of studies to reduce morbidity and mortality is available *only for medical research and education.*" (Emphasis added.) The information cannot be released for general publication. The question is whether the word "may" in the above-quoted language of section 135.41 is permissive or mandatory with respect to the "summary of such studies." If permissive, the UIHC has the discretion to withhold disclosure of such summaries. If mandatory, the UIHC has no such discretion and must disclose the information.

Generally, the word

> "may," when used in a statute, is permissive only and operates to confer discretion unless the contrary is clearly indicated by the context. A mandatory construction will be given it when it can be seen that the legislative intent was to impose a duty, and not simply a privilege or discretionary power, and where the public is interested, and the public or third persons have a claim de jure to have the power exercised. But it is only where it is necessary to give effect to the clear policy and intention of the legislature that it can be construed in a mandatory sense.

*Wolf v. Lutheran Mut. Life Ins. Co.,* 236 Iowa 334, 340–41, 18 N.W.2d 804, 808 (1945).

There is nothing in section 135.41 to indicate the legislature clearly intended as a policy matter to require disclosure of the summaries in question. To the contrary, requiring disclosure would frustrate the very purpose for collecting nosocomial information: to reduce morbidity or mortality. Public disclosure of nosocomial infection data would have a chilling effect on voluntary reporting by physicians and hospital staff of such infections. What we have said about the necessity to maintain the confidentiality privilege in Iowa Code section

147.135(2)(1985) regarding peer review records applies with equal force to infection control summaries:

[The privilege] allows a physician to consult with peers about his [or her] care and treatment of a particular patient. It also allows critical retrospective analysis of cases to learn better methods of treatment for the future. Similarly, it encourages peers to lodge complaints and initiate disciplinary action against those who are practicing substandard care, without fear of disclosure or retribution.

*Carolan v. Hill,* 553 N.W.2d 882, 886 (Iowa 1996) (quoting Thomas A. Finley et al., *Tort Reform and Medical Malpractice: Iowa's Past, Present, and Future,* 36 Drake L.Rev. 669, 676 (1986–87)). Contrary to the district court, we conclude that under section 135.41, the UIHC has discretion on whether to disclose the summaries in question.

As we alluded to earlier, the district court resolved the apparent conflict between sections 135.40–.42 and chapter 22 by concluding that "[n]othing in sections 135.40–.42 prohibits the release of the data summaries requested by [Burton]." This conclusion made it unnecessary for the district court to address another argument Burton raised to that court. Our conclusion that the UIHC has discretion on whether to disclose the summaries in question brings into focus that argument. The argument pertains to language that originally appeared in Iowa Code section 68A.2. Section 68A.2 provided broadly that every citizen of Iowa has the right to examine and copy all public records "unless some other provision of the Code expressly limits such right or requires such records to be kept secret or confidential."

One commentator correctly interpreted the qualification this way:

Chapter 68A was enacted "to *protect* the right of citizens to examine public records...." Because it was not meant thereby to create rights of examination where the legislature had specifically determined previously that none existed, section 68A.2 does not supersede prior statutory restrictions. Examples of express limitations found outside of chapter 68A are the required confidentiality of social records prepared in accordance with proceedings of the juvenile court [Iowa Code section 232.57 (1971)], proceedings and testimony before a grand jury [Iowa Code section 771.23–.24 (1971)], applications, investigative reports, and case records concerning old age assistance [Iowa Code section 249.44 (1971)], and accident reports filed with the state Department of Motor Vehicles [Iowa Code section 321.271 (1971)]. It should be noted that each of these limitations is predicated on either the nature of the interest to be safeguarded or the effect that examination of such records may have on individuals. This standard should be employed whenever other Code provisions are raised as placing limits on the public's right to know.

Note, *Iowa's Freedom of Information Act: Everything You've Always Wanted to Know About Public Records But Were Afraid to Ask,* 57 Iowa L.Rev. 1163, 1174–75 (April 1972) (citations omitted).

In 1984, the legislature removed from section 68A.2 the language "unless some other provision of the Code expressly limits such right or requires such records to be kept secret or confidential." *See* 1984 Iowa Acts ch. 1185, § 2. This suggests to Burton that there cannot be an exemption to the release of public records statutorily mandated as confidential except as specifically provided in chapter 22.

Chapter 22 now provides two sources that qualify the public's right to examine public records. The first source includes the exemptions—28 in number as of 1993—that are found in Iowa Code section 22.7. Section 22.7 allows the specifically described records in this section to be "kept confidential, unless otherwise ordered by the court, by the lawful custodian of the records, or by another person duly authorized to release such information."

■ The second source includes the injunction to restrain examination procedure found in Iowa Code section 22.8. Notwithstanding the section 22.7 exemptions, section 22.8 allows the district court "to provide an equitable relief valve to the disclosure requirements of" chapter 22. *City of Dubuque*

*v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 528 (Iowa 1980). In other words, section 22.8 is "an equitable remedy independent of" the section 22.7 exceptions, and "is applicable when specific criteria are met." *Id.* There are two criteria: "the examination would clearly not be in the public interest" and "the examination would substantially and irreparably injure any person or persons." Iowa Code § 22.8.

We can speculate on why the legislature deleted the language "unless some other provision of the Code expressly limits such right or requires such records to be kept secret or confidential" from section 68A.2. Whatever the reason, such deletion created a conflict where none existed before. The conflict is between the disclosure requirements of chapter 22—a general statute covering disclosure of public records—and the more specific statutes covering disclosure of records like those in sections 135.40–.42.

■ Three rules of statutory construction lead us to conclude that chapter 22 does not trump or supersede specific statutes like sections 135.40–.42 on confidentiality of records. First, if the conflict between a general and specific provision is irreconcilable, the special provision prevails as an exception to the general provision. Iowa Code § 4.7. As mentioned, chapter 22 is a general provision allowing disclosure, with certain exceptions not relevant here, of public records. Sections 135.40–.42 are special provisions covering disclosure of infection data summaries which, under the facts of this case, are public records because they belong to a state hospital. As we earlier concluded, these sections allow the UIHC discretion to keep such records confidential. The irreconcilable conflict between chapter 22 and sections 135.40–.42 requires us to consider the latter as an exception to the former.

■ Second, there is a strong presumption against implied repeal. *Lemon v. City of Muscatine*, 272 N.W.2d 429, 431 (Iowa 1978). The presumption is even stronger when a repeal is claimed of a special statute by a more general one. *Id.* at 432. Burton's argument that the legislature's deletion of the language in question now allows chapter 22—a general provision on disclosure of pub-

lic records—to trump more specific statutes on confidentiality of public records is in reality an implied repeal argument. Burton has not overcome the strong presumption against such a repeal.

■ Last, strained, impractical, and absurd results that defeat the purpose of the legislation in question are to be avoided. Iowa Code § 4.6(5) (in interpreting ambiguous statutes to determine legislative intent, court may consider consequences of a particular construction); *Pearson v. Robinson*, 318 N.W.2d 188, 190 (Iowa 1982). Accepting Burton's argument potentially subjects all public records now covered with the shield of statutory confidentiality and outside of the protection of the section 22.7 exemptions to public disclosure. Such a result would be contrary to the interests to be protected by such statutes and to the legislative policy underlying them. Had the legislature intended such a drastic result we think it would have clearly said so when it deleted the language in question from section 68A.2 in 1984. Because the legislature did not say so convinces us that it did not intend such a result.

In sum, we hold that section 135.41 gives the UIHC discretion to deny public disclosure of the infection data summaries notwithstanding chapter 22. The district court's decision to the contrary must therefore be reversed. We remand for entry of summary judgment on the UIHC's motion for summary judgment and for an order dismissing Burton's petition. Our holding renders Burton's cross-appeal issues moot.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**