# IN THE SUPREME COURT OF IOWA

No. 14–0569

Filed April 22, 2016

EXCEPTIONAL PERSONS, INC.; NEW CHOICES, INC.; HANDICAPPED DEVELOPMENT CENTER; LIFE WORKS COMMUNITY SERVICES; CANDEO, VOCATIONAL DEVELOPMENT CENTER, INC., HEALTHY CONNECTIONS, INC.; and KRYSILIS, INC.,

Appellees,

vs.

IOWA DEPARTMENT OF HUMAN SERVICES,

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Medicaid service providers challenge payment rates set by the Iowa Department of Human Services, contending the rates are not authorized by the department's administrative rules. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED.**

Thomas J. Miller, Attorney General, Timothy L. Vavricek (until withdrawal) and then Daniel W. Hart, Assistant Attorney General, for appellant.

Patrick B. White of White Law Office, P.C., Des Moines, for appellee.

**HECHT, Justice.**

A 2009 executive order announced a ten percent reduction in spending by departments and agencies of state government for the fiscal year ending June 30, 2010. As one part of its response to the executive order, the Iowa Department of Human Services (IDHS) promulgated temporary rules adjusting the reimbursement rates paid to Medicaid service providers. Before those temporary rules expired, the legislature passed a statute directing IDHS to continue for the next fiscal year the rate reductions "as specified under" the 2009 executive order. In its response to the legislative mandate, IDHS promulgated permanent rules implementing certain rate reductions, but inadvertently omitted a reduction for one component of the rate calculation for certain Medicaid service providers. Nonetheless, it continued to reimburse those service providers at the reduced rates established under the temporary rules. Exceptional Persons, Inc. and several other providers contend that, even if the "missing" rule was a mere oversight, IDHS cannot reimburse them at the reduced rate without a rule authorizing it to do so. We conclude the statute provides sufficient authority and therefore affirm the agency's decision.

## I. Background Facts and Proceedings.

Medicaid is part of the federal medical assistance program under Title XIX of the Social Security Act. *See generally* 42 U.S.C. §§ 1396–1396w-5 (2012). The federal Medicaid program provides funding to states that have implemented federally approved medical assistance programs. *Id.* § 1396-1. Such programs provide financial assistance to families that lack the ability to pay their medical expenses. *Id.* The Iowa medical assistance program, like its federal counterpart, is referred to as Medicaid. Iowa Code § 249A.2(7) (2015).

IDHS is responsible for managing the Medicaid program in Iowa. *Id.* § 249A.4 (2009). In managing the program, IDHS sets payment rates for Medicaid waiver home and community-based service (HCBS) providers. *Id.* § 249A.4(9). The legislature has specifically directed IDHS to promulgate the administrative rules governing the program—including rules establishing "the method and level of reimbursement." *Id.*

Appellees in this matter—which we refer to collectively as Exceptional Persons—are various organizations providing home and community-based services to Iowa Medicaid waiver recipients. Exceptional Persons delivered services to Medicaid recipients throughout Iowa during the fiscal year commencing July 1, 2010, and ending June 30, 2011. The providers challenged the reimbursement rates paid by IDHS for those services, contending the rates were incompatible with the agency's rules. The circumstances relevant to our resolution of this rate dispute take us back to the autumn of 2009.

On October 8, 2009, Governor Chet Culver signed Executive Order 19, mandating an across-the-board ten percent reduction of spending by government departments and agencies. *See* Exec. Order No. 19 (Oct. 8, 2009). IDHS began its rulemaking process to implement the cuts the Governor ordered. The agency adopted administrative rule 441—79.16(10), reducing the rates IDHS paid to HCBS providers by 2.5 percent. The rule provided in relevant part,

> The following payment provisions shall apply to services rendered during the period from December 1, 2009, to June 30, 2010, notwithstanding any contrary provision in this chapter.
>
> . . . .
>
> **79.16(10)** Notwithstanding any provision of subrule 79.1(2), payment for covered services rendered by home- and

community-based waiver service providers shall be reduced by 2.5 percent from the rates in effect November 30, 2009.

    *a.* Rates based on a submitted financial and statistical report shall be consistent with the methodology described in subparagraph 79.1(15)*"d"*(1) except that the inflation adjustment applied to actual, historical costs and the prior period base cost shall be reduced by 2.5 percent.

    . . . .

    This rule is intended to implement Executive Order 19 and Iowa Code Chapter 249A.

Iowa Admin. Code r. 441—79.16 (2009). This case focuses on the inflation adjustment. The "notwithstanding" language reduced the inflation adjustment by 2.5 percent in determining the amount of payment during the period from December 1, 2009, to June 30, 2010, but did not remove from the administrative code the provisions in subrule 79.1(15)(*d*) allowing an inflation adjustment in rate calculations in the first place. *See id.* Rule 441—79.16 included a sunset provision ending its effectiveness on June 30, 2010. *See id.*

On April 20, 2010, Governor Culver signed House File (H.F.) 2526 into law. The bill detailed appropriations for IDHS, approved the rate reductions implemented by the agency in rule 441—79.16, and mandated the continuation of those reductions for the fiscal year commencing July 1, 2010. Section 33(1)(q) of H.F. 2526 instructed that

[u]nless otherwise provided in this section, the department shall continue the reduction in payments to medical assistance program providers for the fiscal year beginning July 1, 2010, and ending June 30, 2011, in the percentage amount applicable to the respective provider as specified under Executive Order 19.

2010 Iowa Acts ch. 1192, § 33(1)(q).

In response to H.F. 2526, IDHS promulgated new administrative rules. Instead of utilizing a catchall "notwithstanding" provision, as was done in its regulatory response to Executive Order 19 in fiscal year 2009,

IDHS amended several individual rate-setting rules. Although it intended these new rules to establish rate reductions identical to those implemented in response to Executive Order 19, IDHS inadvertently failed to promulgate a rule reducing the inflation adjustment by 2.5 percent in calculating rates paid to HCBS providers. IDHS concedes its new rules adopted in response to H.F. 2526 failed to include such a reduction but maintains the failure was the result of an oversight, not a conscious decision to revive the adjustment and the resulting higher reimbursement rate paid prior to the issuance of Executive Order 19 and rule 441—79.16(10).

In an administrative proceeding before IDHS, Exceptional Persons challenged the rate calculation for the fiscal year beginning in 2010 and ending in 2011. Exceptional Persons contended the full inflation adjustment—without a 2.5 percent reduction—must be applied in calculating rates for HCBS providers for the period in question. Its assertion rested on three premises: (1) IDHS rules in effect at the time of the issuance of rule 441—79.16(10) mandated an inflation adjustment; (2) the rule prescribing an inflation adjustment was never eliminated from the IDHS rules, so it remained in force after the sunset provision in rule 441—79.16(10) automatically extinguished the temporary 2.5 percent reduction; and (3) IDHS must include the full inflation adjustment in calculating rates paid to HCBS providers for the period in question because it promulgated no new 2.5 percent reduction and it has no authority to calculate rates that are inconsistent with its own administrative rules. IDHS maintained that although its rules were flawed, it retained authority to reduce the amount paid to the providers because H.F. 2526—which required the agency to continue the rate

reductions into the subject fiscal year—trumped any inconsistent administrative rule.

An administrative law judge agreed with IDHS's position and granted summary judgment in its favor. Exceptional Persons sought administrative review of the decision, and the Director of IDHS affirmed. Exceptional Persons sought judicial review.

The district court concluded the inflation factor must be applied without a 2.5 percent reduction in calculating rates for Exceptional Persons under the applicable IDHS rules for the period in question. IDHS appealed and the court of appeals affirmed the district court's decision. IDHS sought further review, and we granted the application.

## II.  Scope of Review.

The Iowa Administrative Procedure Act, codified in Iowa Code chapter 17A, governs judicial review of agency decisions. *See Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838 (Iowa 2013). In our review, we "apply the standards of [Iowa Code] section 17A.19(10) to determine whether we reach the same results as the district court." *Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762 (Iowa 2011). If we reach the same conclusions as the district court, we affirm; if not, we may reverse. *Democko v. Iowa Dep't of Nat. Res.*, 840 N.W.2d 281, 286 (Iowa 2013).

## III.  Analysis.

IDHS contends H.F. 2526 provides a legislative directive that conflicts with its flawed administrative rules—which continue some but not all of the reductions implemented in response to Executive Order 19. When a statute and an administrative rule conflict, IDHS argues, the statute controls and trumps the rule. *See Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911, 913 (Iowa 1979) (noting an agency's

rulemaking power cannot exceed the power granted to the agency by statute). Exceptional Persons disagrees, asserting the failure of IDHS to promulgate a rule continuing the 2.5 percent reduction in inflation adjustment deprives the agency of authority to calculate HCBS rates without the full value of the adjustment.

When the plain language of a statute or rule is clear, we need not search for meaning beyond the statute's express terms. *Rock v. Warhank*, 757 N.W.2d 670, 673 (Iowa 2008). We may presume the words contained within a statute have the meaning commonly attributed to them. *Second Injury Fund v. Kratzer*, 778 N.W.2d 42, 46 (Iowa 2010). We can resort to rules of statutory construction, however, when a statute's meaning is ambiguous. *See Remer v. Bd. of Med. Exam'rs*, 576 N.W.2d 598, 601 (Iowa 1998). "A statute is ambiguous if reasonable persons could disagree as to its meaning." *Id.*

When interpreting statutes, we first seek to understand the underlying legislative intent. *See Hardin Cty. Drainage Dist. 55 v. Union Pac. R.R.*, 826 N.W.2d 507, 512 (Iowa 2013). In determining legislative intent, we consider the statute's "subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, . . . and the consequences of various interpretations" alongside the words of the statute. *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003). We examine the context in which the relevant word or phrase is used, give a "plain, ordinary meaning to words, phrases, and punctuation," and assume "no part of an act is intended to be superfluous." *TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.,* 638 N.W.2d 708, 713 (Iowa 2002). We may not change or expand the meaning of a statute in the course of our interpretation, *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011), and we "search[] for the legislative

intent as shown by what the legislature said, rather than what it should or might have said," Iowa R. App. P. 6.904(3)(*m*). While we do not consider what the legislature should or might have said, we may consider those things the legislature said in one provision, but not in another. *Wiebenga v. Iowa Dep't of Transp.*, 530 N.W.2d 732, 735 (Iowa 1995).

The first step in our analysis is to consider the plain language of the statute. H.F. 2526 directs IDHS to "continue the reduction in payments to medical assistance program providers . . . in the percentage amounts applicable to the respective provider as specified under Executive Order 19." 2010 Iowa Acts ch. 1192, § 33(1)(q). At first glance, this appears to be a clear directive by the legislature. Yet, Executive Order 19 itself "specifies" no applicable percentage rates. Executive Order 19 merely directs state agencies to "modif[y] . . . allotment requests, pursuant to Iowa Code 8.31, to achieve an annual ten percent budget reduction for Fiscal Year 2010." Exec. Order No. 19. The only specific percentage rate reduction mentioned is the overarching ten percent budget reduction to be implemented across all departments and agencies. We conclude reasonable minds could differ as to whether the relevant language in section 33(1)(q) of H.F. 2526 provided IDHS with authority to extend the specific rate reductions implemented by the agency in response to Executive Order 19.

Although Executive Order 19 prescribes no specific percentage of reduction for rates paid to HCBS providers, H.F. 2526 clearly indicates the legislature intended IDHS would "continue the reduction in payments" previously implemented in response to the Governor's order. 2010 Iowa Acts ch. 1192, § 33(1)(q). Thus, we conclude H.F. 2526 constituted a mandate that IDHS must maintain the status quo in

calculating rates paid to Medicaid service providers for the fiscal year in question here.

Because IDHS failed to promulgate a rule enacting all of the reductions required under H.F. 2526, the agency's pre-2009 administrative rule calling for utilization of the inflation adjustment remained on the books. We conclude that fact is not dispositive. Although not formally reduced because of an oversight, the rule prescribing the inflation adjustment in calculating rates for HCBS providers was in conflict with the statute. When a statute directly conflicts with a rule, the statute controls. *Des Moines & Cent. Iowa Ry. v. Iowa State Tax Comm'n*, 253 Iowa 994, 999, 115 N.W.2d 178, 181 (1962) ("An administrative board has only such power to enact rules as are not inconsistent with the law to be administered."). Although IDHS failed to promulgate *rules* effectuating all of the rate reductions required under section 33(1)(q), the agency did actually implement all of the mandated reductions in calculating the rates paid to Exceptional Persons for the period in question. We decline to read H.F. 2526 in a manner allowing IDHS's rulemaking mistake to contravene legislative intent.

### IV. Conclusion.

The district court erred in concluding IDHS's failure to promulgate specific rules reducing the inflation adjustment in calculating rates for HCBS providers required the agency to ignore a statutory directive. We vacate the decision of the court of appeals and reverse the district court's judgment.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED.**