# IN THE SUPREME COURT OF IOWA

No. 20–1429

Submitted September 15, 2021—Filed October 22, 2021

**DOMENICO CALCATERRA,**

Appellee,

vs.

**IOWA BOARD OF MEDICINE,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Robert Hanson, Judge.

The Iowa Board of Medicine appeals a district court order that reversed the Board's declaratory order interpreting Iowa Code section 272C.6(4)(*a*). **AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Thomas J. Miller, Attorney General, and Anagha Dixit (argued), Assistant Attorney General, for appellant.

Trent Nelson (argued) and Michael M. Sellers of Sellers Galenbeck & Nelson, Des Moines, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

We are asked to review an Iowa Board of Medicine (Board) declaratory order interpreting Iowa Code section 272C.6(4)(*a*) (2018). Section 272C.6(4)(*a*) provides that "investigative information" gathered in relation to a licensed professional's disciplinary proceeding shall be "privileged and confidential, . . . not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline, and . . . not admissible in evidence in a judicial or administrative proceeding other than the proceeding involving licensee discipline." *Id.* It further provides that "investigative information in the possession of a licensing board or its employees or agents which relates to licensee discipline may be disclosed to appropriate licensing authorities within this state [or] the appropriate licensing authority in another state." *Id.* Additionally, it provides that "[i]f the investigative information in the possession of a licensing board or its employees or agents indicates a crime has been committed, the information shall be reported to the proper law enforcement agency." *Id.* Lastly, it states, "However, a final written decision and finding of fact of a licensing board in a disciplinary proceeding . . . is a public record."

In its declaratory order, the Board concluded that Iowa Code section 272C.6(4)(*a*) allows it to publish statements of charges and press releases containing investigative information. On judicial review, the district court disagreed. In the following opinion, we come to the same conclusion as the

district court. We find that the above-quoted provisions mean what they say, and that they tightly circumscribe the Board's ability to disclose investigative information. Public disclosure is not allowed, other than in a "final written decision and finding of fact." *Id.* Therefore, we affirm the district court's order reversing the Board's declaratory order.

**II. Background Facts and Proceedings.**

The Iowa Board of Medicine is the state's administrative body responsible for licensing physicians and regulating medical professionals. *See* Iowa Code § 147.13(1); *id.* § 148.3. As part of this responsibility, the Board investigates alleged rule violations by licensed physicians and, if necessary, conducts disciplinary proceedings. *See id.* § 148.7. Domenico Calcaterra is a cardiothoracic surgeon who formerly practiced in Iowa City and, at that time, was licensed by the Board. Currently, Dr. Calcaterra practices out of state.

In March 2013, the Board filed a statement of charges against Dr. Calcaterra accusing him of "a pattern of disruptive behavior and/or unethical or unprofessional conduct." The Board's statement of charges included factual allegations relating to a specific incident in November 2010 as well as allegations of prior unprofessional conduct. Around the same time, the Board sent out a press release to its email subscribers that contained much of the same information as its statement of charges.

The Board published both the statement of charges against Dr. Calcaterra and the press release on its website. The Board has publicized its disciplinary

actions in this way for several decades. Other licensing boards in Iowa follow a similar practice.

Approximately a year later, in April 2014, the Board's disciplinary action against Dr. Calcaterra terminated when the parties reached a settlement. Under the settlement, Dr. Calcaterra accepted a citation and warning and agreed to pay a $5,000 civil penalty. The Board posted the settlement to its website. It also issued another press release that not only disclosed the settlement but also reiterated the factual allegations against Dr. Calcaterra, although those allegations had not been admitted to or even recited in the settlement.

Several years later, information about the allegations against Dr. Calcaterra remained available on the Board's public website, and Dr. Calcaterra maintained that their presence was adversely impacting his medical career. On September 26, 2018, Dr. Calcaterra filed a petition for declaratory order with the Board. *See id.* § 17A.9. Therein, he asked the Board to answer the following question: "Does Iowa Code 272C.6(4)(a) prohibit the Board from publicly issuing/publishing statements of charges and issuing/publishing press releases which contain investigative information?" More particularly, he urged the Board to "issue a ruling declaring that all statements of charges and press releases issued and published by the Board are violative of state law and subsequently remove them from the public record and the Iowa Board of Medicine website."

The Board declined to enter any type of declaratory order. Therefore, on December 21, Dr. Calcaterra filed a petition for judicial review in the Polk County

District Court. The Board moved to dismiss the petition. It argued that any challenge by Dr. Calcaterra to the Board's prior actions against him was untimely and that Dr. Calcaterra lacked standing to raise arguments on behalf of other licensees.

On July 7, 2019, the district court denied the Board's motion to dismiss. The court noted that Dr. Calcaterra was not challenging the 2014 settlement, but instead, was challenging the Board's ongoing dissemination of investigative information. The court directed the Board to issue a declaratory order answering Dr. Calcaterra's question.

On August 22, the Board issued a declaratory order answering "no" to Dr. Calcaterra's question. Regarding Iowa Code section 272C.6(4)(*a*), the Board indicated that the confidentiality protection therein "extends to the *patient*, not the physician." In addition, the Board pointed out that its own administrative rules have long provided that statements of charges are public records. *See* Iowa Admin. Code r. 653—24.2(8) (2018). Next, the Board referenced an unpublished opinion of our court of appeals holding that a statement of charges is a public record under chapter 22. Lastly, the Board observed that "[e]very other Iowa professional licensing board mandates by rule that their statements of charges are public."

At this point, Dr. Calcaterra amended his petition for judicial review to challenge the substance of the Board's declaratory order. The parties submitted briefing. Following oral argument, on April 26, 2020, the district court entered a ruling that set aside the Board's order. The district court reasoned that Iowa

Code section 272C.6(4)(*a*) was "clear and unambiguous" and prohibited the disclosure of investigative information "unless and until such information is disclosed in the findings of fact section of a final written decision made at the conclusion of a disciplinary proceeding." In the district court's view, a statement of charges could be published on the Board's website that did not disclose the factual basis; however, "[t]he facts that brought about the charges are precisely the type of investigative information that the legislature intended to be privileged and confidential in Iowa Code Section 272C.6(4)(a)." The district court added that statutory language takes precedence over conflicting agency regulations.

The Board appealed this ruling, and we retained the appeal.

**III. Standard of Review.**

The sole question before us is whether the Board correctly interpreted Iowa Code section 272C.6(4)(*a*). We review an agency's interpretation of a statute for errors at law unless the legislature has clearly vested interpretive authority in the agency. *Id.* § 17A.19(10)(*c*), (*l*); *Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 64–65 (Iowa 2015); *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). If agency discretion has been granted by the legislature, we will reverse an agency's interpretation only if it is "irrational, illogical, or wholly unjustifiable." *Renda*, 784 N.W.2d at 10 (quoting Iowa Code § 17A.19(10)(*l*)).

As we explained in *Renda v. Iowa Civil Rights Commission*, "When a term has an independent legal definition that is not uniquely within the subject matter expertise of the agency, we generally conclude the agency has not been vested

with interpretative authority." *Id.* at 14. In *Renda,* the fighting issue was the meaning of the words "dwelling" and "employee" as used in the Iowa Civil Rights Act. *Id.* at 10. We declined to defer to the Iowa Civil Rights Commission's interpretation of those words, in part because both terms were "widely used in areas of law other than the civil rights arena." *Id.* at 14.

Here, we are dealing with the phrase "privileged and confidential." In *Doe v. Iowa Board of Medical Examiners,* we decided the Board did not have interpretive discretion to determine what "information is, and is not, confidential" under Iowa Code section 272C.6(4). 733 N.W.2d 705, 708 (Iowa 2007). We see no reason to come to a different conclusion today. No statutory language indicates the legislature intended to vest interpretive authority in the Board. It is true that section 272C.5 grants the Board general rulemaking authority. *See* Iowa Code § 272C.5. But rulemaking authority on its own does not equate to interpretive discretion. *Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 143 (Iowa 2013); *Renda,* 784 N.W.2d at 13.

The question of interpretation in this case—whether "privileged and confidential" as used in section 272C.6(4)(*a*) means that the Board cannot publicize investigative information—is not informed by the Board's special expertise. Indeed, we already said as much in *Doe. See* 733 N.W.2d at 708 ("Whether information is confidential is not informed by the expertise of the board, but rather focuses on the interests of the parties."). Significantly, section 272C.6(4)(*a*) is not unique to the Board; it applies to many different licensing boards. If we deferred to a single board's interpretation we would be blind to the

fact that the statute applies to many boards. Furthermore, courts frequently interpret the terms "privileged" and "confidential" in a variety of contexts. *See, e.g., Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 228 (Iowa 2019) (deciding whether certain police reports were confidential). For these reasons, we decide that section 17A.19(10)(*c*) applies here, and we review for correction of errors at law.

**IV. Analysis.**

Dr. Calcaterra's petition for a declaratory order raises this question: does Iowa Code section 272C.6(4)(*a*) prohibit the Board from publicly issuing statements of charges and press releases that contain investigative information?[1] The Board answered "no." We disagree with the Board and hold that section 272C.6(4)(*a*) prohibits investigative information from being released to the public prior to a final decision in the licensee's disciplinary proceeding. As we discuss herein, our holding is consistent with the statute's unambiguous text and is supported by precedent.

When interpreting the meaning of a statute, we start with the statute's text. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). If statutory language in its proper context is unambiguous, we do not look past the plain meaning of the words. *United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 109 (Iowa 2019).

---

[1] We have not been asked to determine the scope and meaning of the term "investigative information." The Board concedes that its statements of charges regularly contain "limited investigative information." The district court found that "investigative information includes at least the specific factual allegations against a licensee that have not been substantiated and decided in a disciplinary proceeding."

"Statutes need to be read as a whole, both in initially determining whether ambiguity exists and, later, in construing the statute." *Porter v. Harden*, 891 N.W.2d 420, 425 (Iowa 2017); *see also* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . .").

In 1977, the Iowa legislature enacted the general licensing law now found in Iowa Code chapter 272C. *See* 1977 Iowa Acts ch. 95 (originally codified at Iowa Code ch. 258A (1979), now codified as amended at Iowa Code ch. 272C (2013)). This law established a framework for licensing boards to regulate many professions and occupations, including physicians. *See* Iowa Code § 272C.1(6) (listing the licensing boards covered by the chapter). The provision at issue in this case, Iowa Code section 272C.6(4)(*a*), states,

> In order to assure a free flow of information for accomplishing the purposes of this section . . . all complaint files, investigation files, other investigation reports, and other investigative information in the possession of a licensing board . . . which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline . . . . However, investigative information . . . may be disclosed to appropriate licensing authorities . . . . If the investigative information in the possession of a licensing board . . . indicates a crime has been committed, the information shall be reported to the proper law enforcement agency. However, a final written decision and finding of fact of a licensing board in a disciplinary proceeding . . . is a public record.

Section 272C.6(4)(*a*) thus contains a general rule that is sandwiched between a prefatory clause ("In order to . . . .") and several carefully delineated exceptions ("However . . . ."). The general rule states that "investigative

information . . . which relates to licensee discipline [is] privileged and confidential." *Id.* Release of investigative information cannot be compelled "to a person other than the licensee and the boards, their employees and agents involved in licensee discipline." *Id.* Further qualifications are that (1) the Board may disclose investigative information to appropriate licensing authorities in Iowa or elsewhere; and (2) the Board must disclose investigative information to law enforcement if the information indicates a crime has been committed. *Id.* Lastly, the statute provides that final written decisions are public records. *Id.*

In the present case, the Board invites us to find an *additional* exception beyond the stated exceptions despite the categorical language of the general rule. In our view, the plain language of the statute does not permit us to take this step.

Notably, the statute not only limits the public's ability to compel disclosure by the Board, it also limits the Board's ability to *voluntarily* disclose investigative information. Therefore, it makes no difference that the Board voluntarily posted information about its investigation of Dr. Calcaterra on its website.

The exception for release to other licensing authorities deals with a form of voluntary release. If the general rule didn't apply to voluntary release, this exception would not be necessary. Also, the previous sentence specifically authorizes release of the information to the Board itself and its own employees and agents. If the general rule didn't cover voluntary release, this specific authorization would not be needed.

The statute's prefatory clause—"In order to assure a free flow of information"—does not help the Board, either. *Id.* In context, the phrase "free flow of information" refers to the Board's ability to *receive* information, not its ability to disseminate it. The point being made is that confidentiality would encourage those who have relevant information about a licensee to turn it over to the Board more freely and willingly.

Read in its entirety, we do not believe the statute is ambiguous. Investigative information cannot be released to the public prior to a final decision in a disciplinary proceeding.

The Board urges us to look beyond Iowa Code section 272C.6(4)(*a*) to other areas of the Code. The Board argues that the district court's reading of section 272C.6(4)(*a*) cannot be reconciled with the Administrative Procedure Act and the Open Records Act.

The Administrative Procedure Act requires the Board to give licensees notice of disciplinary proceedings against them. *See* Iowa Code § 17A.12(1)–(2). The Board does so with a statement of charges. The notice must include:

> *a.* A statement of the time, place, and nature of the hearing.
>
> *b.* A statement of the legal authority and jurisdiction under which the hearing is to be held.
>
> *c.* A reference to the particular sections of the statutes and rules involved.
>
> *d.* A short and plain statement of the matters asserted.

*Id.* § 17A.12(2).

The Board insists that "a short and plain statement of the matters asserted" must often include investigative information. Yet even assuming that were so, nothing in Iowa Code section 17A.12 requires the full statement of charges to be made public. To the extent necessary, the Board can redact information from the public version of a statement of charges.

The Board would also have us consider the Open Records Act. In the Board's view, statements of charges are public records that must be made available to the public in their entirety. *See id.* § 22.2(1). We see things differently. It is true that statements of charges do not neatly fall under any Iowa Code section 22.7 exception.[2] *See id.* § 22.7 (listing categories of public records that "shall be kept confidential"). Yet, section 22.7 does not purport to span the universe of confidential government records. Elsewhere, the Iowa Code contains a number of standalone provisions that make certain information or records confidential. *See, e.g., id.* § 422.72 (deeming tax return information confidential); *id.* § 622.10(1) (addressing communications made in professional confidence).

In *Burton v. University of Iowa Hospitals & Clinics*, we made clear that "chapter 22 does not trump or supersede specific statutes . . . on confidentiality of records." 566 N.W.2d 182, 189 (Iowa 1997). *Burton* involved the medical peer-

---

[2]Dr. Calcaterra hypothesizes that investigative information could be shielded from the public disclosure by Iowa Code section 22.7(60) of the Open Records Act. That section categorizes as confidential "[i]nformation in a record that would permit a governmental body . . . to hold a closed session pursuant to section 21.5 in order to avoid public disclosure of that information." *Id.* Iowa Code section 21.5(1)(*d*) in turn allows an agency to hold a closed session to "discuss . . . whether to initiate licensee disciplinary investigations or proceedings if the governmental body is a licensing or examining board." Thus, a case can be made that investigative information is covered by section 22.7(60). Regardless, as we discuss in the main text, chapter 22 does not supersede a separate provision in the Iowa Code mandating confidentiality, such as section 272C.6(4)(*a*).

review privilege set forth in Iowa Code section 135.41. *Id.* at 186. We held that section 135.41 authorized hospitals *not* to release certain peer-review records even though nothing in section 22.7 shielded those records from disclosure. *Id.* at 188. We have reiterated this point about section 22.7's nonexclusivity more recently. Last year, we said in *Milligan v. Ottumwa Police Department* that "specific state law prohibitions on disclosure located outside of chapter 22 . . . can overcome the disclosure provisions in the Open Records Act." 937 N.W.2d 97, 102 (Iowa 2020).

In this case, section 272C.6(4)(*a*) specifically mandates nondisclosure. That language controls notwithstanding the lack of corresponding language in section 22.7.

The Board also points out that it and other professional licensing boards have promulgated rules to the effect that statements of charges should be made public. *See* Iowa Admin. Code r. 653—8.6(1) ("The following records are available at no cost to the public: . . . statements of charges . . . .") (Iowa Board of Medicine); *see also id* r. 645—11.6 (Iowa Professional Licensure Division); *id.* r. 655—20.7 (Iowa Board of Nursing); *id.* r. 657—35.7 (Iowa Board of Pharmacy). The parties acknowledge these rules have been in effect for some time. The Board would have us give considerable weight to these longstanding rules in our interpretation of the confidentiality provision. The Board cites *Hope Evangelical Lutheran Church v. Iowa Department of Revenue & Finance* where we said, "Administrative rules have the force of law and are presumed valid. Weight should be given to the department's interpretation of the statutes, particularly when they are of long

standing, but this court is not bound by that interpretation." 463 N.W.2d 76, 84 (Iowa 1990) (citation omitted).

In the post-*Renda* world, we have refined somewhat what we previously said in *Hope Evangelical Lutheran Church*. Regarding the situation where the legislature has not vested interpretive authority in the agency, we have observed,

> "Longstanding administrative interpretations are entitled to some weight in statutory construction." *Griffin Pipe Prods. Co. v. Bd. of Review*, 789 N.W.2d 769, 775 (Iowa 2010). It is true, as we have already said, that we must interpret [the statute at issue] ourselves, but at a minimum the durability of the previous interpretation is worth noting.

*Iowa Ins. Inst.*, 867 N.W.2d at 77; *see also Mathis v. Iowa Utils. Bd.*, 934 N.W.2d 423, 430 (Iowa 2019) (reiterating this language); *Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 204 n.2 (Iowa 2016) ("While it may be true that '[l]ongstanding administrative interpretations are entitled to some weight in statutory construction,' we remain responsible to determine if the administrative body is correct on the matter of law." (alteration in original) (quoting *Iowa Ins. Inst.*, 867 N.W.2d at 77)).

"Some weight" is not enough to override clear statutory language. "Adoption of administrative rules which are at variance with statutory provisions or which amend or nullify legislative intent exceed[s] the department's authority." *Wakonda Club v. Iowa State Bd. of Tax Rev.*, 444 N.W.2d 490, 491 (Iowa 1989). "When a statute directly conflicts with a rule, the statute controls." *Exceptional Persons, Inc. v. Iowa Dep't of Hum. Servs.*, 878 N.W.2d 247, 252 (Iowa 2016).

Moreover, some prior caselaw supports our interpretation of Iowa Code section 272C.6(4)(*a*). In *Doe v. Iowa Board of Medical Examiners*, we addressed what was then Iowa Code section 272C.6(4), now section 272C.6(4)(*a*), in a somewhat different context. 733 N.W.2d at 709. An Iowa physician had applied for a license to practice medicine in another state. *Id.* at 706–07. The Board revealed to the other state's licensing board certain prior complaints against the physician, even though no formal disciplinary proceeding had been initiated by the Board in Iowa. *Id.* We decided that because the Board's disclosure fell under a listed exception to the general rule of confidentiality, it was therefore permissible. *Id.* at 709, 712.

Several aspects of our *Doe* decision are noteworthy for present purposes. First, in *Doe* we took a broad view of what investigative information *relates* to licensee discipline. We said, "Section 272C.6(4) was intended to ensure broad confidentiality of all complaint and investigative information pertaining to licensee discipline." *Id.* at 710.

Second, in *Doe* we traced the legislative history of the statute, with relevance for the present case. We explained that "[t]aken literally, section [272C.6(4)] did not allow disclosure of complaint or investigative information, even during a disciplinary proceeding arising from that information." *Id.* at 709. Therefore, the legislature soon "adopted a technical amendment . . . providing that complaint and investigative information could not be disclosed to any person 'other than the licensee and the boards . . . involved in licensee discipline' and was not admissible in any proceeding 'other than the proceeding involving

licensee discipline.' " *Id.* (second omission in original) (quoting *Doe v. Iowa State Bd. of Physical Therapy & Occupational Therapy Exam'rs*, 320 N.W.2d 557, 560–61 (Iowa 1982)). The significance of this legislative history is plain. The fact that the legislature found it necessary to explicitly authorize disclosure of investigative information to the Board itself and within the disciplinary proceeding itself—two seemingly self-evident propositions—strongly suggests we should not be creating additional, unauthorized exceptions.

Third, in *Doe* we said, although admittedly in dicta, "Section 272C.6(4) ensures that the general public does not have access to complaint or investigative information unless, and until, a final written decision is published and is, therefore, a public record." *Id.* at 711. The Board makes no effort in the present case to distinguish this language.[3]

We do not discount the Board's policy arguments. As a general proposition, transparency in government is a good thing. In addition, members of the public may find value in getting access to whatever information a licensing agency has about a professional, including the contents of unverified complaints against him or her. But there are countervailing considerations. Individuals involved in an investigation need to be able to speak freely, and this is encouraged by confidentiality. *Cf. Carolan v. Hill*, 553 N.W.2d 882, 886 (Iowa 1996) ("Without

---

[3]The Board cites to earlier language in *Portz v. Iowa Board of Medical Examiners*, 563 N.W.2d 592, 595 (Iowa 1997), where we said that patient records subpoenaed by the Board "are to be seen only by the board during its investigation. *See* Iowa Code § 272C.6(4)." The Board suggests that once the investigation is completed and the disciplinary case is brought, such information *can* be released so long as patient identity is protected. *Portz* didn't say that and, in any event, the language in *Doe* is more recent, more definitive, and directly on point.

the broad protections, [peer-review participants] would be very reluctant to participate . . . .”). In addition, a professional's livelihood can be damaged by putting unproved allegations in public view on an official government website. Dr. Calcaterra claims this happened to him.

It is the legislature's role to balance these considerations, not ours. Presumably, the legislature did so when it enacted Iowa Code section 272C.6(4)(*a*).[4] The statute contains other examples of legislative balancing. For example, the Board has a duty to report criminal conduct by the physician to law enforcement. *Id.* Also, investigative information eventually becomes available to the public at the close of disciplinary proceedings. *Id.* (“However, a final written decision and finding of fact of a licensing board in a disciplinary proceeding . . . is a public record.”).

Our duty is to adhere to the plain meaning of the text. We do so here, and hold that investigative information cannot be released to the public in a statement of charges or a press release when there has been no underlying final decision in the disciplinary proceeding.

---

[4]Iowa's statute does not appear to be unique in what it requires. Legislatures in nearby states have made similar balancing choices. Their statutes require information obtained by licensing boards during disciplinary investigations to be kept confidential. *See, e.g.*, Kan. Stat. Ann. § 65–2839a (West, Westlaw through 2021 Reg. Sess); Minn. Stat. Ann. § 147.01(4) (West, Westlaw through 2021 Reg. Sess. and 1st Spec. Sess.); Mo. Ann. Stat. § 334.001(1)–(2) (West, Westlaw through 2021 1st Reg. and 1st Extraordinary Sess.). These states' administrative rules do not provide for public release of a statement of charges or similar document at the outset of a disciplinary proceeding. *See generally* Kan. Admin. Regs. § 100 (2021); Minn. R. 5615 (2008); Mo. Code Regs. Ann. tit. 20 § 2150 (2019). *See also Uckun v. Minn. State Bd. of Med. Prac.*, 733 N.W.2d 778, 788–89 (Minn. Ct. App. 2007) (holding that the Minnesota board could publish a temporary suspension order that contained otherwise confidential investigative data only because such an order constituted a “disciplinary measure[] of any kind” within the meaning of a designated exception to the general rule of nondisclosure).

**V. Conclusion.**

For the reasons stated, we affirm the order of the district court.

**AFFIRMED.**