# IN THE COURT OF APPEALS OF IOWA

No. 20-1396
Filed February 17, 2021

**IN THE INTEREST OF H.W., S.J., J.J., and M.J.,**
**Minor Children,**

**D.W., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother appeals the child-in-need-of-assistance adjudication of her children. **AFFIRMED.**

Bryan J. Tingle, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Paul White of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

A mother appeals the adjudication of her children as children in need of assistance (CINA).[1] All four children—H.W., S.J., J.J., and M.J.—were adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2020). Two of the children—H.W. and S.J.—were additionally adjudicated CINA pursuant to section 232.2(6)(d). The mother appeals adjudication under paragraphs (d) and (n). We affirm.

**I. Background Facts**

The mother and her children came to the attention of the Iowa Department of Human Services (DHS) in May 2019 because of a domestic-violence incident. M.J.'s father, Michael,[2] handcuffed and beat the mother while the children were present. Michael was convicted of domestic abuse assault and child endangerment. Afterwards, the mother and all four children went to live with the children's maternal grandmother.

The mother told DHS that her prior relationships also involved incidents of domestic violence, including her relationships with H.W.'s father and with David, S.J. and J.J.'s father. The mother also told DHS that she was depressed and has been told she may have bipolar disorder.

In July, the mother moved into a two-bedroom apartment with seven other people: the four children, Michael, David, and an unrelated adult named Frank.

---

[1] Only the mother appeals the CINA adjudication. She appeals following the entry of a dispositional order. *See In re Long*, 313 N.W.2d 473, 475 (Iowa 1981) (holding an order for adjudication is not final for appeal purposes until disposition).

[2] During the CINA investigation, it was revealed that M.J.'s father is not her biological father. But he is listed on her birth certificate. So we still refer to him as M.J.'s father.

The record suggests Frank may have a mild intellectual disability. David and the mother told DHS that David was Frank's caretaker.

In October, DHS received information that the mother was exhibiting symptoms of substance abuse. In November, the mother tested positive for methamphetamine. She completed a substance-abuse evaluation. There was no recommendation for treatment. But concerns about the mother's methamphetamine use continued.

In April 2020, DHS received a report that S.J. was sexually assaulted by Frank. The alleged sexual assault occurred around 6:00 p.m. Law enforcement was not involved until *Frank* called the police around 5:00 a.m. the next morning. He called alleging "he was being kicked out of his apartment due to people accusing him of sexually assaulting their daughter." DHS asked David and the mother why they did not call the police themselves. They said they did not want Frank to get in trouble.

S.J. underwent a forensic interview. She stated that Frank repeatedly sexually abused her, her mother was aware of the abuse, and her mother had previously witnessed the abuse on several occasions. Before the interview could be completed, David left with S.J. The interview was never completed, and its transcript is not a part of our record. But the DHS worker present at the interview testified about its contents.

The children were all removed to the maternal grandmother's care, where they continue to reside. A no-contact order was issued between the mother and children. The mother and David were both arrested and charged with sexual abuse and neglect in connection with Frank's sexual abuse of S.J.

In July, the children were adjudicated CINA. In August, the children were confirmed CINA.

In September, the mother filed a motion under Iowa Rule of Civil Procedure 1.904(2). She asked the court to clarify what paragraphs of section 232.2(6) apply to each child. The court granted the motion. The court clarified that all four children were adjudicated CINA pursuant to section 232.2(6)(c)(2) and (n). In addition, H.W. and S.J. were adjudicated CINA pursuant to section 232.2(6)(d).

The mother now appeals.

## II. Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[W]e are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests." *Id.* (citation omitted). "In determining the best interests of the child[ren], 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (second alteration in original) (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006)). "CINA determinations must be based upon clear and convincing evidence." *J.S.*, 846 N.W.2d at 41. We ask whether there are "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *L.H.*, 904 N.W.2d at 149 (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

**III. Analysis**

CINA proceedings are governed by chapter 232. We find the meaning of chapter 232 in its words. *In re C.S.*, No. 19-1444, 2020 WL 1550675, at *1 (Iowa Ct. App. Apr. 1, 2020); *see Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (noting "in questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means'" and "[t]his is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law" (first alteration in original) (citation omitted)).

In section 232.2, the legislature defined the term "child in need of assistance" or CINA. For a child to be adjudicated CINA, the child must be affected by one or more of the situations described in paragraphs 232.2(6)(a) through (q).[3] Here, the mother appeals her children's CINA adjudications under paragraphs (d) and (n).

We begin by addressing the mother's claim that H.W. and S.J. should not have been adjudicated CINA under paragraph (d). It applies to a child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other *member of the household in which the child resides*." Iowa Code § 232.2(6)(d) (emphasis added). Here, the sexual abuser was Frank. The mother claims that because Frank is not related to herself, S.J., or David, Frank cannot be a "member of the household" for purposes of paragraph (d). In support, the mother cites section 236.2(4). It provides, in relevant part: "*For purposes of this chapter*, unless a different meaning is clearly indicated by the context: . . . .

---

[3] The child must also be "unmarried." Iowa Code § 232.2. It appears undisputed that all children involved are unmarried.

'Family or household members' means spouses, persons cohabiting, parents, or other persons related by consanguinity or affinity." Iowa Code § 236.2(4)(a) (emphasis added).

By its own terms, though, section 236.2 only applies to chapter 236 ("*this chapter*"), which governs domestic abuse cases. *Id.* We cannot rewrite section 236.2(4) so it will also apply in CINA cases, which are governed by *chapter 232*. *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019). So we cannot rely on section 236.2(4) to decide whether Frank was a "member of the household."

Instead, we must focus on chapter 232. The parties do not cite, and we have not found, any definition within chapter 232 for the term "member of the household in which the child resides."[4] When the legislature does not define words

---

[4] While it seems unlikely that the question before us has not arisen in a prior case, the parties do not cite—and we did not find—any opinions that directly address the issue before us.

We have not overlooked the supreme court's discussion of the term "member of the household in which the child resides" in *In re J.C.*, 857 N.W.2d 495 (Iowa 2014). There, the question before the court was whether an established father was a "parent" for purposes of chapter 232. *J.C.*, 857 N.W.2d at 497. As part of its analysis, the court noted that, in addition to precisely-defined categories such as "parent," chapter 232 also refers to more "capacious or undefined" categories—including the category of "other member[s] of the household in which the child resides." *Id.* at 503–04 (quoting Iowa Code § 232.2(6)(b), (c)(2)). The court explained:

> [I]n various provisions in chapter 232, the legislature coupled carefully defined, discrete terms, such as parent, guardian, or custodian, with a capacious or undefined term to reach individuals whose relationship to a child is less precisely delineated. In this case, for example, one of the provisions under which the juvenile court adjudicated J.C. was Iowa Code section 232.2(6)(c)(2). This provision defines a child in need of assistance as a child
>
> > [w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, *or other member of*

in a statute, we generally give those words "their common, ordinary meaning in the context within which they are used." *J.C.*, 857 N.W.2d at 500.

In ordinary usage, the word household "can have two meanings." *In re Smith*, 396 B.R. 214, 216 (Bankr. W.D. Mich. 2008). "First, it may mean simply all of the persons who use a particular structure as their dwelling space." *Id.*; *accord id.* n.7 ("[A] social unit comprised of those living together in the same dwelling place." (alteration in original) (quoting *Household*, Webster's Third New International Dictionary (unabr. ed. 1986))); *Household*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/household (last visited Feb. 15, 2021) (listing "a social unit composed of those living together in the same dwelling"

---

> *the household in which the child resides* to exercise a
> reasonable degree of care in supervising the child.
>
> Iowa Code § 232.2(6)(c)(2) (emphasis added). This provision enables a CINA adjudication if a member of the child's household other than one of the three specifically defined parties fails to exercise reasonable care in supervising the child. This provision has clear potential to encompass a wide range of individuals who could come into contact with the child. Other provisions aimed at different conduct are phrased similarly. *See, e.g.*, *id.* § 232.2(6)(b) (defining a child in need of assistance as one who has been or is imminently likely to be abused or neglected by a "member of the household in which the child resides"). In these provisions, the legislature coupled the three defined terms with an undefined term meant to broaden the provision's scope to reach others. To connect the terms the legislature used the disjunctive conjunction "or."
>
> . . . .
>
> As this review of these code provisions demonstrates, the legislature crafted a narrow and specific definition of "parent" under chapter 232. But where it deemed necessary, it coupled the term with more encompassing language meant to embrace other individuals whose acts or omissions could threaten the child's welfare and best interests. The use of the disjunctive conjunction "or" to connect the terms implies the legislature intended "parent," as well as "guardian" and "custodian," to mean something different than the more encompassing terms.
>
> *Id.*

as a definition of "household"); *Household*, *Black's Law Dictionary* (11th ed. 2019) (listing "[a] group of people who dwell under the same roof" as a definition of "household"). This "'heads on beds' approach . . . includes all the persons who occupy a housing unit," whether related or not. *In re Morrison*, 443 B.R. 378, 384 (Bankr. M.D. N.C. 2011) (citation omitted). However, as the mother points out, household can also be understood to "involve a familial relationship." *Smith*, 396 B.R. at 216. "That is, a household may mean only those persons who live together *and* who are also related by blood or marriage." *Id.* (emphasis added); *accord id.* n.8 ("[T]hose who dwell under the same roof and compose a family." (alteration in original) (quoting *Household*, Webster's Third New International Dictionary (unabr. ed. 1986))); *Household*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/household (last visited Feb. 15, 2021) (listing "those who dwell under the same roof and compose a family" as a definition of "household"); *see also Household*, *Black's Law Dictionary* (11th ed. 2019) (listing "[a] family living together" as a definition of "household").

Importantly, though, our job is not to consider the word "household" *in isolation*. *See Doe*, 943 N.W.2d at 610. Rather, we must consider it in the context of chapter 232, which we read "as a whole." *Id.*; *see also Deal v. United States*, 508 U.S. 129, 132 (1993) (noting it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Context is a primary determinant of meaning.").

Review of chapter 232 "as a whole" reveals that the legislature included specific directions for the chapter's interpretation. Section 232.1 states, in relevant part: "This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state." We must "honor the legislature's directive" in section 232.1 "to construe chapter 232 liberally to 'best serve the child's welfare.'" *In re A.M.*, 856 N.W.2d 365, 373 (Iowa 2014).

With this in mind, we return to the text of section 232.2(6)(d). As explained, when (as here) a child "has been, or is imminently likely to be, sexually abused by" someone who is not "the child's parent, guardian, [or] custodian," paragraph (d) can apply only if the abuser is a "member of the household in which the child resides." So, the scope of the statute's protection depends on the meaning of the term "household." If we adopt the mother's narrow definition of "household," paragraph (d) could only apply if the child's abuser *not only* lives with the child *but also* is part of a family with "which the child resides." Conversely, if we adopt the State's proposed definition of "household," paragraph (d) could apply whenever a child is abused by someone who lives with the child, regardless of familial relationships. Clearly, the State's broader, "heads on beds" interpretation of "household" provides greater protection for children. *See Morrison*, 443 B.R. at 384. So we must adopt it. *See* Iowa Code § 232.1; *A.M.*, 856 N.W.2d at 373; *see also United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 110 (Iowa 2019) ("When the legislature issues this kind of directive on statutory interpretation, it binds us.").

The only question, then, is whether Frank resided with S.J. Following our de novo review, we conclude he did. After the alleged abuse occurred, Frank told the police that he "was being kicked out of *his* apartment." (Emphasis added.) When DHS inspected the two-bedroom apartment where the children resided, Frank was there. It was then that the mother and David told DHS that David was Frank's "caretaker" and they all lived in the same apartment. After the children were removed, the mother and David confirmed with DHS that Frank had been living with them for eighteen months. So we think it is clear Frank resided in the same home as S.J. *See J.S.*, 846 N.W.2d at 42. And since the mother does not raise any other arguments under paragraph (d), we affirm H.W. and S.J. as CINA under section 232.2(6)(d).

Next, the mother appeals the CINA adjudication for all four children under section 232.2(6)(n). It applies to a child "[w]hose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." Iowa Code § 232.2(6)(n). The mother argues paragraph (n) cannot apply here because the record does not "contain evidence to support the allegation that the children were not receiving adequate care in general."

The parties do not cite, and we have not found, authorities that provide a specific definition for the phrase "adequate care." So we again rely on the principle that words in a statute should be given "their common, ordinary meaning in the context within which they are used." *J.C.*, 857 N.W.2d at 500; *cf. Nix v. Hedden*, 149 U.S. 304, 307 (1893) (noting that, although "[b]otanically speaking, tomatoes are the fruit of a vine," they are "vegetables" in "the common language of the

people"). And we bear in mind section 232.1, which requires us to "construe chapter 232 liberally to 'best serve the child's welfare.'" *A.M.*, 856 N.W.2d at 373.

Applying these principles here, we disagree with the mother's suggestion that "adequate care" for a child is limited to "a place to live," "adequate food," and "clothing." Rather, in the common understanding of Iowans, "adequate care" for a child means meeting the child's essential needs. One of those essential needs is a *safe* home. *See In re M.F.*, No. 14-1016, 2014 WL 4930650, at *1 (Iowa Ct. App. Oct. 1, 2014) (affirming the juvenile court's modification of a permanency order where the court found the mother was impaired from providing "a safe, stable home"); *In re J.F.*, No. 06-1277, 2006 WL 2873400, at *1 (Iowa Ct. App. Oct. 11, 2006) (affirming a CINA adjudication where "[t]he court concluded numerous health and safety concerns were present in the home").

The mother was unable to provide a safe home for S.J. Two DHS workers testified to the danger the children would face if they returned to the mother's care. One testified that she believed "the children would be in imminent danger if they returned." The other testified she believed an "imminent risk exists for these children if they were to remain in the custody of any of their parents." After considering this testimony and the evidence as a whole, the district court concluded it "would be contrary to the children's welfare" for them to return to the parental home "because of [the] parents unresolved mental health and substance abuse issues, domestic violence and lack of protective capacity exposing [the] children to substance abuse, domestic violence and sexual abuse." We agree and conclude the children were not receiving "adequate care." *See* Iowa Code § 232.2(6)(n); *J.S.*, 846 N.W.2d at 42.

**IV. Conclusion**

Upon our de novo review, we find the juvenile court was correct in adjudicating H.W. and S.J. CINA pursuant to section 232.2(6)(d) and all four children CINA pursuant to section 232.2(6)(n).

**AFFIRMED.**